IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | **CRIMINAL Action** |
| v. : | |
| : | **13-119** |
| LESTER ANDERSON : | |

**MEMORANDUM**

**STENGEL, J.**                                                                                   **March 27, 2014**

Lester Anderson was arrested in his home on December 31, 2012 following the robbery of a 7-Eleven store in Southwest Philadelphia PA.  In a three count indictment, the United States charges Mr. Anderson with a Hobbs Act robbery and two firearms violations.  18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(ii), 1951(a).  Mr. Anderson contends that the warrantless arrest and subsequent search inside his home violated his Fourth Amendment rights, and he requests that I suppress all evidence stemming from the search and seizure.  This evidence includes: a black Smith and Wesson 9mm handgun, $57 in cash, a black ski mask, the on-scene identifications of Mr. Anderson and his subsequent inculpatory statement to Detective Conway.  The United States responds that exigent circumstances, namely hot pursuit, provide an exception to the warrant requirement.  Even if exigent circumstances do not exist, the government insists that there was no deliberate or culpable police conduct to trigger application of the exclusionary rule.  For the reasons that follow, I will deny Mr. Anderson's motion.

I. BACKGROUND

On February 24, I held a hearing on Mr. Anderson's motion to suppress. The government offered testimony from Philadelphia Police Officer Lamont Lister, who identified Mr. Anderson as the perpetrator of the robbery. On the night in question, Officer Lister was working the 10:45 p.m. to 6:45 a.m. office shift at the police First District headquarters. Since Officer Lister was on restricted duty, he was unarmed and not in uniform. In the early morning, Officer Lister went to the 7-Eleven located at 2301 Passyunk Avenue. Officer Lister testified a man wearing a ski mask entered the store. When Warren Autry, the cashier, asked the man to remove his mask, the man drew a gun and demanded that Mr. Autry open the register. The suspect took all of the money from the drawer. When Mr. Autry was unable to open the second register, the suspect fled on foot. Officer Lister noted that there was another patron in the store during the robbery.

Officer Lister followed the suspect out of the store and West on Passyunk Avenue. At 4:55 a.m., Officer Lister called 911 to report the robbery and he provided the operator with a description of the suspect as well as his location and direction of travel.[1] At some point, the suspect removed the ski mask, and Officer Lister alleges he saw Mr. Anderson's face. Officer Lister followed the suspect North on Bonsall Street and

---

[1] The defense played a recording of Officer Lister's 911 call. In the recording, Officer Lister stated that he witnessed the perpetrator getting into a silver Pontiac. This recording contradicted Officer Lister's testimony. Following the recording, the government recalled Officer Lister in rebuttal to explain the discrepancy in his testimony. Officer Lister testified that he was reciting landmarks to give police a better idea of where Mr. Anderson was going. He said that his mind was going a million miles a minute and he simply misspoke. Instead of saying that the defendant passed the silver Pontiac, he told the dispatcher that the defendant got into the Pontiac. I found Officer Lister's explanation to be credible. In any event, my conclusion would not change had the inconsistency gone unexplained.

witnessed the suspect enter either 2216 or 2218 Bonsall Street.[2] Officer Lister called 911 to provide the suspect's location, as he waited on the front porch of the house across from 2216 Bonsall Street. Officer Lister testified that he was within 30 paces of the suspect at all times and never lost sight of him.

At approximately 5:02 a.m., Philadelphia Police arrived on Bonsall Street. Officer Mayhew approached 2216 Bonsall Street with Officer Lister. Officer Castellanos went to the rear of the house. The door to 2216 Bonsall Street was ajar and it opened when Officer Mayhew knocked. Mr. Anderson approached the doorway from inside, and said, "What the fuck are you doing in my house?" Mr. Anderson continued towards the officers as Officer Lister identified Mr. Anderson as the suspect. Officer Mayhew grabbed Mr. Anderson, a struggle ensued and a 9 mm handgun fell to the ground. Mr. Anderson was placed under arrest. Mr. Autry came to the scene and identified Mr. Anderson as well. After securing a search warrant, officers searched 2216 Bonsall and found $57 in cash and a black ski mask. While in police custody, Mr. Anderson confessed to the robbery.

Under oath, Officer Lister testified that he did not attempt to arrest the suspect at 7-Eleven because he was unarmed. Officer Lister feared that attempting to arrest the suspect under the circumstances would create a high risk of harm to himself, Mr. Autry and the other customer. Officer Lister followed the suspect because he was armed and a danger to the community. Additionally, trailing the suspect was necessary to affect an

---

[2] The doors to 2216 and 2218 are immediately adjacent to each other and share the same set of stairs. Officer Lister could not be certain into which house the suspect entered.

arrest. Officer Lister noted that the chances of catching a suspect decrease as the length of an investigation increases. Officer Lister did not believe that the police would have found and arrested the perpetrator if he had not followed the suspect to Bonsall Street.

## II.     STANDARD OF REIVEW

On a criminal defendant's motion to suppress evidence, the United States bears the burden of proving that the actions of its agents complied with all Fourth Amendment safeguards. See Lego v. Twomey, 404 U.S. 477, 489 (1972). In the event a Fourth Amendment violation occurred, the government must establish that the officer's conduct was not sufficiently deliberate or culpable to trigger the exclusionary rule. Id. In both instances, the controlling burden of proof is the preponderance of evidence standard. Id.

## III.    DISCUSSION

"[T]he very core" of the Fourth Amendment's protection is the right of every citizen to be free from unreasonable searches and seizures within his home. See Kyllo v. United States, 533 U.S. 27, 31 (2001) (citing Silverman v. United States, 365 U.S. 505, 511 (1961)). Since the warrant requirement is the primary defense against unreasonable intrusions, Welsh v. Wisconsin, 466 U.S. 740, 748 (1984), a warrantless arrest made within a home is presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 587 (1980) (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). However, exigent circumstances may make a warrantless search objectively reasonable for Fourth Amendment purposes. Kentucky v. King, 131 S. Ct. 1849, 1856 (2011) (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)). Such exigencies include the safety of the officers,

the safety of other persons, hot pursuit and the destruction of evidence. United States v. Coles, 437 F.3d 361, 366 (3d Cir. 2006) (citations omitted). "In these limited situations, the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." Id. (citing Warden v. Hayden, 387 U.S. 294, 298-99 (1967))

The government argues that the hot pursuit exception to the warrant requirement applies to this case. Mr. Anderson disagrees. His counsel contends that hot pursuit requires: "1.) the police initiate an arrest and chase of the suspect in a public place; 2.) the length of the chase is immaterial, so long as it existed; and 3.) the chase be immediate and continuous from the scene of the crime." Def.'s Reply Br. (doc. no. 29) 14. According to the defense, it is the chase that creates the exigency because if the suspect knows he is being pursued the risks that he will escape, destroy evidence or injure the officer or others increase. Here, the defense believes that Officer Lister's failure to attempt the arrest in public takes this case out of the hot pursuit requirement because the suspect was never aware that Officer Lister was on his trail.

I agree that this is not a hot pursuit case. Describing what it called a "true hot pursuit," the Supreme Court noted that "hot pursuit means some sort of chase, but it need not be an extended hue and cry in and about the public streets." United States v. Santana, 427 U.S. 38, 42-43 (1976) (internal quotation marks omitted) (defendant attempted to evade arrest on her front porch by retreating inside her home). In a second case, the Court found that there was no hot pursuit because there was no "immediate or continuous pursuit of the petitioner from the scene of a crime." Welsh v. Wisconsin, 466 U.S. 740,

753 (1984) (police arrested defendant in his home for a dui based on another driver's account and vehicle registration found in defendant's abandoned vehicle). The Court has also suggested, in dicta, that there is no hot pursuit when a fleeing felon is unaware he is being followed. Johnson v. United States, 333 U.S. 10, 16 n. 7 (1948) ("[W]e find no element of 'hot pursuit' in the arrest of one who was not in flight, was completely surrounded by agents before she knew of their presence, who claims without denial that she was in bed at the time, and who made no attempt to escape."). While I decline to accept defendant's definition of hot pursuit in full, I gather from these cases that Officer Lister's covert pursuit of the suspect is not the type of chase covered by the hot pursuit exception.

  Even though I find that there was no hot pursuit, the exigencies of the situation justify the police conduct in this case. Hot pursuit "is not a limitation but rather an illustration of the kind of exigent circumstance justifying entry without a warrant to arrest a suspect." Dorman v. United States, 435 F.2d 385, 391 (D.C. Cir. 1970). In what the Supreme Court called "a leading federal case defining exigent circumstances," Welsh, 466 U.S. at 751-52, the Court of Appeals for the District of Columbia outlined several factors which support a finding of exigent circumstances including:

    1.) A crime of violence has occurred;

    2.) Reasonable suspicion that the suspect is armed;

    3.) Probable cause that the suspect committed the crime based on reasonably trustworthy information;

    4.) Strong reason to believe that the suspect is in the premises;

>    5.)    Likelihood of escape if the suspect is not swiftly apprehended;
>
>    6.)    Police make a peaceful, not forcible, entry.

Dorman, 435 F.2d at 392 – 93.

Consideration of the Dorman factors compels a finding of exigent circumstances. The robbery of the 7-Eleven store at gun point was a violent crime. Officer Lister witnessed the crime and followed the suspect to 2216 Bonsall Street. This information gave officers probable cause that the person who committed the crime was armed and located at the property to be searched. *See* United States v. McGlory, 968 F.2d 309, 342 (3d Cir.1992) ("Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed."). Officer Lister testified he thought the suspect would escape if not immediately arrested.[3] Finally, the police did not forcefully enter Mr. Anderson's residence; rather, the front door was unlatched and it opened when the officers knocked.

Furthermore, the facts of this case are very close to Warden v. Hayden where the Supreme Court found the warrantless arrest of the defendant was reasonable given the exigent circumstances.[4] 387 U.S. 294, 298 (1967). After robbing a cab company, Hayden was followed by two cab drivers to his home. Id. at 297. The drivers called

---

[3] This factor does not strongly support a finding of exigent circumstances. When police arrived on the scene, officers blocked the only two exits out of the house. However, the remaining five Dorman factor weigh heavily in favor of exigent circumstances.

[4] Hayden is often cited as the origin of the hot pursuit doctrine; however, the Supreme Court has clarified that "Hayden was based upon the exigencies of the situation, and did not use the term hot pursuit or even involve a hot pursuit." Santana 427 U.S. at 42 n. 3.

7

police and informed them of the suspect's location.  Id.  Acting on the cab drivers' tip, the police entered Hayden's house without a warrant, arrested Hayden and seized evidence.  Id.  On federal habeas review, the Supreme Court held that police did not need to delay the investigation in order to get a warrant if the delay would endanger their lives, the lives of others or allow the suspect to escape.  Id. at 299.  Here, Officer Lister is akin to the cab drivers in Hayden, providing reliable information to police about a violent crime and the perpetrator's whereabouts.

I also find that the confrontation between Mr. Anderson and police created exigent circumstances supporting the warrantless arrest.  The defense concedes that Officer Mayhew was justified in knocking on Mr. Anderson's door.  Def.'s Reply 6.  There is no evidence that the officers knew the door was unlatched or that it would open when they knocked.  *See* Kentucky v. King, 131 S. Ct. 1849, 1858 (2011) ("Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry … is reasonable and thus allowed."). When Mr. Anderson saw the officers, he approached them in an aggressive and confrontational manner.[5]  Given that the officers had probable cause to believe Mr. Anderson was armed, they were permitted to restrain and arrest Mr. Anderson to guard their own safety.  Warden, 387 U.S. at 298 (threat to officers' safety creates exigency).

---

[5] There appears to be a dispute as to when the police crossed the threshold.  The government contends that police did not enter the house until Mr. Anderson confronted them.  The defense argues that police immediately entered the house when the door opened.  This is a distinction without a difference.  Entering the house would have been supported by exigent circumstances even if the door had not opened.  *See* Dorman, 435 F.2d at 392 – 93.  Further, police did not attempt to arrest Mr. Anderson until he confronted the officers.  Mr. Anderson's hostile conduct created an exigency justifying the warrantless arrest.  I fail to see how the officers' position either one foot outside or one foot inside the threshold should change the analysis.

Therefore, I conclude that the warrantless arrest and seizure of evidence in Mr. Anderson's home did not violate the Fourth Amendment.

Even if I were to find that the search and seizure were unreasonable, the exclusionary rule would not apply. The exclusionary rule is not a personal right; its sole purpose is to deter future Fourth Amendment violations. United States v. Wright, 493 Fed.Appx. 265, 271 (3d Cir. 2012) (citing Davis v. United States, 131 S.Ct. 2419 (2012). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009). This extreme remedy is reserved for situations where police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." Wright, 493 Fed.Appx. at 271.

Because the police conduct was neither deliberate nor culpable, granting the suppression motion would have no deterrent effect. Officer Lister's conduct is an example of good police work which should be encouraged – not deterred. It would have been extremely reckless for Officer Lister to attempt an arrest of the suspect at the 7-Eleven. Officer Lister was unarmed. He would have subjected himself, Mr. Autry and the other customer to a great risk of harm had he attempted to subdue the armed suspect. More importantly, the officers did not negligently disregard Mr. Anderson's rights by knocking on his door. Mr. Anderson concedes as much. The officers had no reason to believe that the door would open when they knocked. It follows that they could not foresee that a confrontation with Mr. Anderson would ensue when the door opened. Mr.

9

Anderson set the stage for the confrontation by approaching the officers at the entrance to the house in a hostile and aggressive way.  On these facts, there is no basis to find a deliberate, reckless or grossly negligent violation of Mr. Anderson's Fourth Amendment rights.

The defense argues that the evidence should be suppressed because the good faith exception does not apply.  However, this is not a good faith case.  The Supreme Court has applied the good faith exception when police rely on a defective warrant, an invalid statute or erroneous information maintained in a computer database.  Davis v. U.S., 131 S.Ct. 2419, 2428 (2011) (collecting cases).  These cases have no application where, as here, the officers made a warrantless arrest based on their observation of the facts and events unfolding before their eyes.  But to the extent that the cases do support Mr. Anderson's theory, I find that Officers Lister and Mayhew's perception of exigent circumstances was objectively reasonable.  See United States v. Leon, 468 U.S. 897, 926 (1984) ("Suppression is appropriate only if the officers … could not have harbored an objectively reasonable belief in the existence of probable cause.").  In any event, the government has sustained its burden that the officer's conduct was not sufficiently deliberate or culpable; therefore, a lack of good faith alone would not require suppression.  See Wright, 493 Fed. Appx. at 272 ("[A]lthough qualifying for the good faith exception may result in admitting evidence, not qualifying for it does not mean that the evidence will be suppressed.").

## IV. CONCLUSION

Exigent circumstances supported the warrantless arrest and search of Mr. Anderson inside his home. Even if the arrest and search were unreasonable, the officers' conduct was not sufficiently deliberate or culpable to trigger the exclusionary rule. Therefore, I will deny Mr. Anderson's motion to suppress evidence.

An appropriate order follows.